310 So.2d 513 (1975)
STATE of Louisiana, Appellee,
v.
Willie Patterson WILLIAMS et al., Appellants.
No. 55600.
Supreme Court of Louisiana.
March 31, 1975.
James S. Gravel, Eugene P. Cicardo, Alexandria, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Eddie Knoll, Dist. Atty., Jeannette Theriot Knoll, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The four defendants were convicted of simple robbery, La.R.S. 14:65. Each was sentenced to five years' imprisonment at hard labor. Their appeals question principally the overruling of the motions for a new trial, La.C.Cr.P. art. 851, and of the motions for a directed verdict, La.C.Cr.P. art. 778.
The four defendants are alleged to be part of a group of six young men who entered and robbed the proprietor of the Juneau store, who was alone at the time. The defendant Stanley, she testified, *514 grabbed her and pushed her into the walkin cooler, while one or more others in the group assisted in the robbery. She could not specifically identify any of the other defendants as members of the group, except Williams.
The three defendants (Williams, Carter and Cleveland) other than Stanley are tried as principals, La.R.S. 14:24, who aided and abetted in the commission of the crime. Their defense is that there is no evidence that tended to establish their participation in the robberyin effect, they (as well as Stanley) contend, they were merely present with a group, two members of which suddenly committed a robbery in which they themselves did not participate.
Motion for directed verdict
With regard to the motions for directed verdict of the defendants, the rule is that the trial court should sustain the motions when no evidence at all has been introduced which proves the crime charged or an essential element of it. State v. Pryor, 306 So.2d 675 (La.1974); State v. Douglas, 278 So.2d 485 (La.1973).
As to the defendant Stanley, the victim specifically identified him as a participant in the robbery. The direct evidence of his participation requires the overruling of his motion for a directed verdict. The defendant's claim that the victim's identification is incredible is a defense for the jury on the merits; even if the argument of misidentification was more substantial, the identification (if admissible, as it is) is some evidence of guilt, thus preventing grant of a directed motion of acquittal.
The three other defendants were convicted by circumstantial evidence from which the trial jury inferred that they were members of a group acting in concert to commit the robbery.
La.R.S. 15:438 provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The issue of whether every reasonable hypothesis of innocence has been excluded presents a question of law. State v. Pryor, 306 So.2d 675 (La.1974); State v. Heymann, 256 La. 18, 235 So.2d 78 (1970); State v. Linkletter and Soldani, 239 La. 1000, 120 So.2d 835 (1960); State v. LaBorde, 234 La. 28, 99 So.2d 11 (1958).
The evidence shows:
Six young black men, including the four defendants, came from Alexandria to a rural area of Avoyelles Parish. They were travelling by car. From noon to two o'clock they stopped at three stores, the last of which (Juneau) was the one robbed.
At each of the stores, most or all of the young men entered the store. They milled about, asking prices, looking around. At two of the stores, they made small purchases (in order, the state argues, to locate the cash drawer).
At the first two stores, they inquired as to where they could obtain a minor automotive repair (different in each case); but after they left the store they made no attempt to go to the service station or mechanic shop recommended. At the first two stores, they left when customers came in or when there was the sound of occupancy in the connected apartment.
At the final (or Juneau) store, they follwed the same behaviour, except that they did not ask about automotive repairs. Mrs. Juneau was alone in the store. After one of them had made a small purchase, others of the group shoved Mrs. Juneau into a cooler, robbed the cash drawer, and left by car. Mrs. Juneau immediately called a neighbor, who notified the police.
The six young men soon stopped at a service station, where they purchased some gasoline. Before the car left the station, three of them had apparently sneaked off to go back to Alexandria along the railroad tracks or by bus from another community. (The state argues that this was to *515 lessen the danger of identification of the group of six.)
The police stopped the automobile at a cross-roads shortly thereafter. Three of the young men, including defendants Williams (the driver) and Stanley, were arrested. A roll of quarters in orange paper, similar to that stolen from the Juneau store shortly before, was found on the floorboard near the driver's seat.
Two more of the young men, including the defendant Cleveland, were located walking down the railroad tracks. Near where they were there arrested, some $631 in currency wrapped in a black cap was found hidden in the weeds, partly on the basis of information received from the defendants Williams and Cleveland.
The defendant Carter was arrested later that evening. The town marshal of a nearby community first accosted him at the bus station, and he fled. Later, he was arrested as he attempted surreptitiously to leave a hiding place in the town.
Counsel for the defendants make persuasive argument that it was unlikely that the six defendants could enter the area with plans to commit a robbery. Their car was old, with battery defective. The group of six was readily identifiable and easily located after the robbery, in that isolated rural area. (In the defense portion of the case, evidence was presented to the effect that the juvenile Bell and the absent defendant Anderson, who had jumped bail, had alone committed the robbery.)
Nevertheless, the trial jury's commonsense inference that the defendants aided and abetted in the robbery is not mere speculation based upon guilt by association. We find the inference to be reasonably based upon the actions of the defendants both prior and subsequent to the robbery, as indicating a scheme or plan to commit in concert a robbery if they located a store with a single attendant. If the evidence was so reasonably accepted by the trial jury, it excluded other reasonable hypotheses of innocence.
Therefore, since the inference was reasonably based upon evidence tending to exclude an innocent explanation for the defendant's actions at the time of the robbery, we are unable to find a total lack of evidence such as is required before granting a directed motion of acquittal.
Motion for a new trial
The motions for a new trial are without merit for the same reasons. The motions for a new trial are based on the lack of evidence to support a conviction. For appellate purposes, this does not raise a reviewable question of law unless there is a total lack of evidence to prove the crime or an essential element of it. State v. Collins, 306 So.2d 662 (La.1975); State v. Cade, 244 La. 534, 153 So.2d 382 (1963).
Motion for mistrial
The final contention urged concerns the denial of a motion for mistrial made by the defendants. The motion was based upon a statement in the closing argument of the prosecutor, following the four-day trial. The remark could be construed as an indirect appeal to locality prejudice.[1]
When the objection was made the trial court immediately sustained it. Although the court denied the mistrial, it instructed the jury to disregard the statement.
The remark is not of the nature requiring a mandatory mistrial by reason of La. C.Cr.P. art. 770. Under the circumstances including the indirect and slight nature of the comment and the prompt and firm admonition by the court, we find that mistrial *516 is not required and that the admonition was sufficient to insure the defendants a fair trial. La.C.Cr.P. art. 771.

Conclusion
We note that the trial judge sentenced the defendants on the same day as their motion for a new trial was denied. However, La.C.Cr.P. art. 873 requires that a twenty-four hour delay must elapse, unless waived, between the denial of the motion for new trial and the imposition of sentence. Therefore, we affirm the convictions; but we remand to the trial court for proper sentencing in accordance with the law.
Affirmed.
SANDERS, C. J., and MARCUS, J., concur in the result.
SUMMERS, J., concurs in the result and assigns written reasons.
SUMMERS, Justice (concurring).
Although conceding that the conviction must be affirmed, I find it necessary to point out what I consider to be error in the Court's opinion. The opinion observes that three of the defendants were convicted by circumstantial evidence and then proceeds to determine whether the inference of guilt drawn by the jury from this circumstantial evidence is "reasonable".
In my opinion this approach is not supported by the cases relied upon, and it is contrary to the rationale long ago approved by this Court.
As I understand the law, the opinion is not concluding that there is some evidence, no matter how little, to establish the guilt of the three defendants. Rather, the Court is evaluating the evidence to determine whether the inference drawn by the jury is reasonable. I do not understand that the Constitution permits the Court to weigh the reasonableness or not of the jury's inference of guilt from evidence. And this notwithstanding that the evidence may be circumstantial. This is the function of the jury as Section 9 of Article XIX of the Constitution (1921) declares in part:
"The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge."
Thus, this Court, acting under the appellate jurisdiction conferred by Section 10 of Article VII of the Constitution, where review in criminal cases is limited to questions of law, is wholly without right to consider the reasonableness of inferences from evidence in a criminal case on the theory that a question of law has been presented.
It is true, of course, that when there is a total lack of evidence to support an essential element of the crime, a question of law is presented. Under these circumstances the Court may examine the record on appeal to determine whether there is some evidence, no matter how little, to support an essential element of the crime charged. But the Court should not, as I believe it seeks to do, in applying this sole exception to the jury's prerogative to determine guilt or innocence, attempt to erode the long-established constitutional guarantee that a person charged with serious crime will have his guilt or innocence determined by a jury. I have consistently refused to subscribe to any encroachment on the constitutional guarantee, and I adhere to that position.
NOTES
[1] "* * * We in Avoyelles Parish are not to be subject to anything such as this. We cannot permit this kind of thing to go unchecked * * * but, you five gentlemen will determine not only the fate of those four people out here, but also the fate of Avoyelles Parish. * * *"

The defendants were from the neighboring parish of Rapides.