274 So.2d 699 (1973)
STATE of Louisiana
v.
Clarence HOLLOWAY, Jr.
No. 52658.
Supreme Court of Louisiana.
February 19, 1973.
Concurring Opinion March 19, 1973.
*700 Brown, McKernan, Monsour & Screen, J. J. McKernan, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Alton T. Moran, Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
The defendant, Clarence Holloway, Jr., was tried by a jury and convicted of the crime of armed robbery, and sentenced to serve nine (9) years in the state penitentiary, La.R.S. 14:64. On this appeal, the accused is relying on five bills of exceptions to obtain a reversal of the conviction. We find merit in none of them.
The first bill of exceptions was reserved during the testimony of the victim, Alfred E. Sistrunk, when the District Attorney asked him whether he could describe from memory an individual who allegedly aided the defendant in the commission of the crime. The witness stated that it had been too long (over a year) to do so at that time. The District Attorney then asked whether, if shown a memorandum, that would help the witness to refresh his knowledge as to the description of the other person. The trial judge overruled the defendant's objection and permitted the witness to review the memorandum and then to testify as to the contents of the memorandum pertaining to the description of the person, citing La.R.S. 15:279 as his authority.
The ruling is correct. La.R.S. 15:279 specifically authorizes such a refreshing of memory in the following language:
"A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact."
The defendant was given a wide latitude in his cross-examination of the witness (reflected in some thirty pages of transcript) which included defense counsel's own particular request of the state to permit *701 the witness to refer again to the same memorandum for the same reason of "refreshing his memory". See State v. Burch, 261 La. 3, 258 So.2d 851 (1972); State v. Barnes, 257 La. 1017, 245 So.2d 159 (1971); see also State v. Nails, 255 La. 1070, 234 So.2d 184 (1970).
There is no merit to this bill.
Defense counsel reserved Bill of Exceptions No. 2 when the trial judge refused to poll the jurors following an overnight recess to determine whether said jurors had read a newspaper article reporting the trial of the instant case. The article quoted the police as saying the defendant, the night after the store holdup for which he was being tried, held up the Motor Inn Motel and shot the night manager. Counsel contends failure to poll the jury prejudiced the defendant and denied him a fair trial as guaranteed by the fourteenth amendment of the U.S. Constitution.
The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. It has been recognized too, that prejudice from newspaper comment of the kind with which we are concerned here may be avoided where the trial court gives the jury cautionary instructions. See Marshall v. United States, 360 U.S. 310, 312-313, 79 S.Ct. 1171, 3 L. Ed.2d 1250 (1959) (recognizing rule). We are in accord with the trial court's Per Curiam to this bill that the general admonitions given at the voir dire examination, again after the jury was picked, in preliminary instructions prior to commencement of trial, and still again when the trial was recessed at the end of the first day of the trial, were adequate. In addition, at the end of the trial, the trial judge again instructed the jury to "disregard anything else you may have heard or read about the case."
Authorities cited by defense counsel in his brief do not appear applicable in that those facts involved front page newspaper headlines, and numerous articles over extended periods of time. Neither does the defense offer any evidence indicating any actual prejudicial influence actually affecting the jurors' verdict. We do not find that the trial court abused his discretion in this instance. State v. Green, 244 La. 80, 150 So.2d 571 (1963).
This bill of exceptions is insubstantial.
When state's witness, Sargent John Rouse was asked by the District Attorney whether or not he had attempted to arrest Robert Lucas who had been described as "the other man involved in this robbery", the defendant objected on the grounds that testimony relating to Robert Lucas was irrelevant. The trial court overruled the objection and the defendant reserved Bill of Exceptions No. 3.
The record discloses subsequent testimony by another police officer which confirmed that Robert Lucas had been identified in the defendant's automobile which was involved in an accident shortly after the robbery. (R-299). Similarly, the defendant himself admitted that Robert Lucas was with him at the time of the automobile accident. (R-317). Further, testimony revealed that the victim had made a positive mug-shot identification of Robert Lucas as one of the robbers (R-282).
Evidence of another person's opportunity to commit the crime may be considered when such person has been closely linked to the commission of the crime. 1 Wharton's Criminal Evidence, "Relevance and Materiality", Section 195, page 405 (Thirteenth Edition). Ordinarily, it is wholly irrelevant to introduce evidence of the attempted arrest of a person other than the defendant for the same crime for which the accused is being tried. But where, as in this case, the defense is based on a claim that the defendant was not present at the scene of the crime, it is certainly relevant for the state to show, if it can, that the defendant was with another person, Robert Lucas, who was in fact positively *702 identified as a perpetrator of the robbery, for all that had a direct bearing on the guilt or innocence of the accused and was properly presented before the jury. Cf. State v. Dyer, 154 La. 379, 97 So. 563 (1923).
The objection that the question was immaterial and irrelevant was not well taken since its purpose was to lay a foundation for the introduction of testimony connecting Robert Lucas with the crime. We do not find that the trial judge erred in the use of his discretion in this instance. State v. Shirley, 256 La. 665, 237 So.2d 676 (1970); La.R.S. 15:441-442; see also La. R.S. 15:275 and State v. Giles, 253 La. 533, 218 So.2d 585 (1969).
Bill of Exceptions No. 3 is without merit.
Bills of Exceptions Nos. 4 and 5 were reserved by defense counsel upon the trial court's overruling his Motions for a New Trial.
Bill No. 4 was based on the allegations that the verdict was contrary to the law and reasserted the exceptions in regard to Robert Lucas. We have disposed of everything of merit in this regard. The allegation that the verdict is contrary to the law and evidence presents nothing more for review. State v. Grey, 257 La. 1070, 245 So.2d 178 (1971). There is no merit to this bill.
In the Motion for a New Trial to which the fifth bill of exceptions was reserved, counsel (on appeal) averred that he had three affidavits establishing that the defendant was not one of the perpetrators of the robbery and that this represented newly discovered evidence which could not have been discovered sooner by the exercise of due diligence on the part of the trial counsel. However, the transcript of the hearing on the Motion for a New Trial reveals that trial counsel was, in fact, familiar with the names of the affiants before the trial, and had contacted two of the three, but that each had stated none had any information which would tend to absolve the defendant. Trial counsel further testified that he made repeated efforts to secure the aid of these affiants but to no avail.
As this Court recently stated in State v. Anderson, 261 La. 244, 259 So.2d 310, 322 (1972):
"* * * Our jurisprudence is legion that the granting or refusing of motions for a new trial rests within the sound discretion of trial judges, and great reliance is placed upon them by appellate courts that they will exercise that discretion well and soundly."
We do not find that the trial judge in the instant prosecution abused his discretion in overruling defendant's Motion for a New Trial. No reversible error was committed and the defendant's rights were not prejudiced. La.C.Cr.P. Arts. 851, 854. See also State v. Jackson, 253 La. 205, 217 So. 2d 372, 376 (1968). This bill has no merit.
For the reasons assigned, we affirm the conviction and sentence.
CALOGERO, J., concurs, and assigns written reasons.
BARHAM, J., dissents with reasons.
TATE, J., dissents and assigns written reasons.
BARHAM, Justice (dissenting).
I am of the opinion that the error forming the basis of Bill of Exceptions No. 1 requires reversal.
When the district attorney asked the first, and apparently the chief, prosecuting witness whether he could describe the man who was with the defendant when the alleged robbery occurred, the witness stated he could not because it had been too long since the event. The district attorney then *703 asked: "If I showed you a memorandum, would that help you to refresh your knowledge as to the description of the other person?" The witness answered: "Possibly could." The defense objected upon the basis that no foundation had been laid as to the source of the contents of the instrument which was offered to the witness for refreshing his memory. The State presented to the trial judge R.S. 15:279 as authority for allowing the witness to examine, for the purpose of refreshing his memory, anything prepared by anyone, with contents from any source. That statute reads:
"A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact." (Emphasis supplied.)
The State's argument was: "The only foundation that had to be laid is that the man [witness] had the opportunity to see both men [the defendant and the alleged accomplice], and he said he did."
From a reading of the evidence attached to the bill of exceptions it appears that the "memorandum" was either a mug shot, or contained a mug shot, of the man the witness was asked to describe. Even after the strong objection because of lack of predicate to show where, how, from whom, for what reason, and from what source the "memorandum" came into existence, the State never presented any evidence to indicate why this particular memorandum would assist this particular witness to refrom his memory. This is not to say that the memorandum did not stimulate an answer. The proper question is whether that answer was actually and truly memory refreshed. Moreover, and more serious perhaps, the court refused on cross-examination to allow the defense to examine and to use the "same memorandum that he [the witness] looked at before to try to refresh his memory on certain points of identification and description he gave the police officers".
Although Louisiana under former jurisprudence so restricted the use of memoranda for refreshing memory as to depart from the majority view in the country, that majority view neither then nor now has ever permitted over objection the use of any and all material without a full explanation of the nature of the material used for refreshing the memory. Our deviation from the better view arose from confusing the concepts of "record of past recollection" as evidence and memorandum for "refreshing recollection". According to the views of Wigmore[1] and McCormick,[2] the strict rules which are applied to "record of past recollection" should not be applied to the process of "refreshing recollection." However, they have always advocated the retention of safeguards around the process of "refreshing recollection". The restrictions which were applied to both concepts in Louisiana and in some other jurisdictions were that the memorandum must have been prepared by the witness himself and prepared at a time so close to the event recorded that the event was still fresh in the witness's mind. The contrary and majority rule requires only that the one offering to refresh a witness's memory establish that because of the nature of the memorandum and of the witness's testimony, the memorandum actually will refresh the memory. As I read our R.S. 15:279 as last amended, our law now conforms to the majority view.
Two safeguards must be offered the adverse party in such a situation. First, the mere fact that the statute permits a memorandum made by anyone at any time to be *704 used to refresh memory does not relieve the court of its obligation to make a legal determination as to whether the memorandum offered for this purpose may be used. The court is required to weigh the value of the memorandum for refreshing memory against the danger of undue and false suggestion, and must deny the use of such an aid if the danger of improper suggestion outweighs the possible value for actually refreshing the witness's memory. Second, the adverse party has a legal right to examine the memorandum before it is used and to have the memorandum for his own use on cross-examination. See McCormick, Evidence § 9 (2nd Ed. 1972); Morris v. United States, 149 F. 123 (5th Cir. 1907).
The majority here has distorted the purpose of the new statutory provision. This provision did not remove the requirement for laying a foundation for the judge's evaluation of the memorandum as prepared for use in refreshing memory; it removed only the former jurisprudential requirement that the memorandum for refreshing memory be made by the witness himself almost contemporaneously with the event. The dictum in State v. Burch, 261 La. 3, 258 So.2d 851 (1972), cited by the majority, actually supports my position. So does State v. Barnes, 257 La. 1017, 245 So.2d 159 (1971), also cited by the majority. In Barnes the court relied upon the trial judge's per curiam which stated that the predicate which had been presented caused him to conclude that the memorandum was proper and valid for refreshing the witness's memory. In the third case cited by the majority, State v. Nails, 255 La. 1070, 234 So.2d 184 (1970), defense counsel was refused the opportunity of examining the statement previously given by the witness to a police officer, which the State had admittedly allowed the witness to examine immediately before entering the courtroom for the purpose of refreshing his memory. That decision not only is inapplicable factually to the case at hand but also was erroneous in ruling that defense counsel could not examine and use that memorandum.
If the broad holding of the majority here is followed, we invite the evidence in criminal trials to be prepared and presented outside the courtroom. We invite abuse by fabrication of evidence. Both the State and the defense need only prepare a complete statement of the evidence they wish to elicit in the courtroom, and then present it upon trial to their witnesses in order to lead them or suggest to them the answers most beneficial. This is not the purpose for which the statute was designed. Neither is it the reason of the doctrinal writers who support a more liberal rule for use of memoranda to refresh memory. The rule and the reasoning of those who support it would differentiate clearly between "past recollection recorded", which is itself of evidentiary value, and "memorandum for refreshing memory".
I am also of the opinion that Bill of Exceptions No. 2 has merit. The trial judge refused to poll the jurors following an overnight recess to determine whether they had read a newspaper article reporting the trial of the case. The article quoted the police as saying that the defendant, the night after the holdup for which he was being tried, robbed a motel and shot the night manager. Counsel contends that the failure to poll the jury prejudiced the defendant and denied him a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution.
The trial judge has great discretion in ruling on the issue of prejudice resulting from the reading by the jurors of news articles concerning the trial. Here, however, the very prejudicial information contained in the news article could not be directly offered as evidence. The prejudice to the defendant is almost certain to have been as great if that information reached the jury through news accounts as it would have been if presented as part of the prosecution's evidence. The prejudice may indeed be greater when not tempered by protective *705 procedures. See Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L. Ed.2d 1250 (1959).
When there is likelihood that a jury was inadvertently exposed to prejudicial communications, the fact that cautionary instructions were given will not suffice, especially where the simple request of the defense or the State is for a polling of the jury to ascertain whether there was such an occurrence. According to the minutes of court, the instructions given to the jury were "not to read, listen to or look at anything in the newspaper, on radio or television pertaining to the case". (Emphasis supplied.) Since the jurors were not forbidden to read the newspapers, we may assume that many of them followed their regular custom. The point here is not that one of the jurors might have deliberately disobeyed the cautionary instructions; it is that the instructions might have been ineffective. The polling of the jury would have determined whether in their reading of the paper their eyes inadvertently fastened upon prejudicial and extraneous information about the defendant. Either party was entitled to a favorable ruling on a simple request for polling under the facts and circumstances of this case. The ruling of the court made it impossible for the defendant to establish prejudiceso prejudice must be presumed.
Being of the opinion that the errors in the rulings presented by Bills of Exceptions Nos. 1 and 2 required reversal, I respectfully dissent.
TATE, Justice (dissenting).
I join in my brother BARHAM's dissent. Without laying any foundation (and without giving the defense attorney an opportunity to inspect it and question its use) a prosecution witness was permitted to "refresh" his memory by being shown an unidentified memorandum. Previously, the witness had been unable to describe the defendant from memory.
Under La.R S. 15:279, the use of such "refreshing" memoranda is possible. However, for the reasons stated by my brother BARHAM, as well as those set forth in the McCormick treatise cited in his opinion, the use of such memoranda should be closely supervised by the court.
As stated at 2 McCormick on Evidence, Section 9, p. 17 (2d ed., 1972) with regard to the protection against the obvious abuses possible: "The first safeguard is the power of control by the trial judge. It is a preliminary question for his decision whether the memorandum actually does refresh, and from the nature of the memorandum and the witness's testimony he may find that it does not. Moreover, in the exercise of his discretion to control the manner of the examination, as in the case of leading questions, he may decline to permit the use of the aid to memory where he regards the danger of undue suggestion as outweighing the probable value.
"The second safeguard is the rule which entitles the adverse party, when the witness seeks to resort to the memorandum, to inspect the memorandum so that he may object to its use if ground appears, and to have the memorandum available for his reference in cross-examining the witness."
I should note that our learned trial brother, faced with an on-the-spot decision of the application of La.R.S. 15:279, applied it literally but expressed serious doubts as to the permissibility of such literal application. He is to be commended for his thoughtful reservations and for his frank ruling conceding that the scope of applicability of statutes must preferably be determined by this court.
For the reasons assigned I respectfully dissent.
CALOGERO, Justice (concurring).
The writer is of opinion that although bill of exceptions No. 1 presents no reversible error some discussion is warranted in view of the possible abuse which could *706 result from the unrestricted use of memorandum to refresh the recollection of a witness.
Bill of exceptions No. 1 was reserved during the testimony of the victim of the armed robbery for which the defendant was charged. The Assistant District Attorney asked the victim if he could describe from memory an individual who allegedly aided the defendant in the commission of the armed robbery. The witness stated that it had been too long since the commission of the crime to remember a description of the alleged accomplice. The Assistant District Attorney then asked the witness whether, if shown a memorandum (which he held in his hand), he could give the description. At this time defense counsel objected to the use of the memorandum to refresh the memory of the witness. The trial court overruled the objection and a bill of exceptions was reserved to this ruling.
There was no error made by the trial court in overruling defense counsel's limited objection to the use of the memorandum to refresh the recollection of the witness. La.R.S. 15:279 expressly provides that:
"A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact."
Defense counsel objected to the use of the memorandum on the grounds that he wasn't provided information as to where the memorandum originated. (R-69) This basis for objection is clearly without merit inasmuch as the statute provides that it is immaterial by whom or where the memorandum was made.
Defense counsel also made the argument that if the memorandum was to be used it was necessary to have it introduced into evidence. This argument is, likewise, without merit. Defense counsel was evidently confusing the doctrine of "refreshing present recollection" with the doctrine known as "past recollection recorded." When "past recollection recorded" is used the witness identifies a memorandum which he himself has made or witnessed the making of some time in the past. When he is shown the memorandum the witness is unable to recall the contents of the memorandum, however, he is able to testify that he made this memorandum (or witnessed the making of the memorandum) and that he recalls it was correct at the time it was made. Thereafter, the memorandum is admitted into evidence as a "past recollection recorded."
However, in the case of "refreshing present recollection," the witness is merely shown a memorandum which aids his recollection, and he can thereafter testify independently of the memorandum. In this case it is the testimony of the witness which is admitted into evidence, whereas in the case of "past recollection recorded" it is the memorandum which is admitted into evidence.
In the instant case the Assistant District Attorney was refreshing the present recollection of the witness and it was not necessary nor would it have been proper to allow the introduction of the memorandum. Thus, the argument of defense counsel is without merit.
The use of memorandum to refresh the present recollection of a witness is not to be unrestricted, however. Rather there are safeguards that are necessary to keep this practice within permissible bounds.
"The first safeguard is the power of control by the trial judge. It is a preliminary question for his decision whether the memorandum actually does refresh, and from the nature of the memorandum and the witness's testimony he may find that it does not. Moreover, as in the case of leading questions, he may decline to permit *707 the use of the aid to memory, where he regards the danger of undue suggestion as outweighing the probable value, in the exercise of his discretion to control the manner of the examination."
"The second safeguard is the rule which entitles the adverse party, when the witness seeks resort to the memorandum, to inspect the memorandum so that he may object to its use if ground appears, and to have the memorandum available for his reference in cross-examining the witness." McCormick Law of Evidence, Sec. 9, p. 17 (1954).
In the instant case, since the testimony attached to the bill of exceptions reveals that there was no request made by defense counsel for an examination of the memorandum, the trial court did not have the opportunity to rule thereon. See La.C.Cr.P. Art. 841. Therefore, Bill of Exceptions No. 1 is without merit.
Since the remaining bills of exceptions are likewise without merit, I concur in the majority opinion.
NOTES
[1] 3 Wigmore, Evidence §§ 758-765 (Chadbourn rev. 1970).
[2] McCormick, Evidence § 9 (2nd Ed. 1972).